IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SEETA MANGAL, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. DLB-22-2478 |
| UR JADDOU, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Seeta Mangal, a citizen of Guyana, applied for a visa to travel to the United States after U.S. Citizenship and Immigration Services ("USCIS") approved an I-130 petition filed by her father, Indarjit Poonwah, to classify her as his immediate relative. But Mangal never made it to the United States. A consular officer denied her visa application because of misrepresentations she made in connection with a previous I-130 petition filed by her then-husband. After the consulate denied the visa, USCIS revoked the I-130 petition her father had filed on her behalf. Poonwah appealed the decision to revoke the I-130 petition to the Board of Immigration Appeals ("BIA") and lost. Mangal and Poonwah then filed this suit against the Director of USCIS Ur Jaddou, the Secretary of the Department of Homeland Security ("DHS") Alejandro Mayorkas, and the Secretary of State Antony Blinken, alleging their agencies violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), by revoking the I-130 petition and denying the visa. ECF 1. The Court dismissed Mangal and Poonwah's complaint without prejudice for lack of subject matter jurisdiction. ECF 16. Now pending before the Court is the plaintiffs' motion for reconsideration pursuant to Rule 59(e). ECF 17. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated below, the motion is denied.

I.      Background

A U.S. citizen who wants to live with an alien relative in the United States may file an I-130 petition to identify the alien as the citizen's immediate relative. *See* 8 U.S.C. § 1154. At some point before 2006, Mangal married U.S. citizen Glenroy Green, who subsequently filed an I-130 petition on her behalf. *See* ECF 1, ¶¶ 17–18; ECF 3-4, at 3. USCIS approved the petition, and the case was sent to the U.S. Consulate General in Georgetown, Guyana, for consular processing. ECF 1, ¶ 17. Mangal attended an initial interview, but consular officers decided they also needed Green to participate in the interview, and so her appointment was rescheduled. *Id.* On May 22, 2006, Green and Mangal attended an interview together, but consular officials interviewed the couple separately. *See id.* ¶¶ 17–18; ECF 13-1, at 5. Following Green's interview, officials accused Mangal of committing marriage fraud. ECF 1, ¶ 18. Officials did not ask Mangal "any substantive questions" about her relationship, nor did they give her the opportunity to present evidence to establish her good faith marriage with Green before accusing her of fraud. *Id.* Officials told Mangal that if she did not admit to the fraud, she would be arrested and "forever barred" from entering the United States. *Id.* Fearful of the repercussions the consular officials threatened, Mangal admitted the marriage was for the purpose of securing immigration benefits. *Id.* By admitting this, Mangal became ineligible for immigration to the United States pursuant to the Immigration and Nationality Act ("INA"), § 204(c). *Id.* ¶¶ 2, 4, 21; *see* 8 U.S.C. § 1154(c). But Mangal alleges that officials did not advise her that this admission would have serious consequences for any future immigration application. ECF 1, ¶ 18. She claims she would not have admitted to marriage fraud if she had known that she would be permanently barred from entering the United States. *Id.* ¶¶ 18–19. The consulate denied the visa application on June 1,

2006, and USCIS revoked the previously approved I-130 on November 6, 2009. ECF 13-1, at 1–2.

Years later, Poonwah filed an I-130 petition on Mangal's behalf, which USCIS also approved. ECF 1, ¶ 20. Poonwah wished to have his daughter join him in the United States because his wife, Mangal's mother, was, and remains, "extremely ill" after "suffering a catastrophic stroke" in 2010. *Id.* ¶ 5 n.2; ECF 17, at 1. With the I-130 petition approved, Mangal again applied for a visa. ECF 1, ¶ 21. During the consular review process, officials determined that Mangal was ineligible for a visa to travel to the United States pursuant to INA § 212(a)(6)(C)(i) because of her previous admission to misrepresenting the nature of her marriage to Green. *Id.* The consulate informed Mangal in writing she nevertheless was eligible for a "waiver of the misrepresentation on form I-601," which would allow her to secure a visa. *Id.* ¶¶ 2, 4, 21, 24. The Attorney General may grant an I-601 waiver based upon "extreme hardship that a qualifying U.S. citizen would suffer" in the absence of a waiver. *Id.* ¶ 5 n.2; *see also Okpa v. U.S. I.N.S.*, 266 F.3d 313, 317 (4th Cir. 2001). Mangal suggests now that she was never eligible for an I-601 waiver because she was inadmissible under § 204(c). ECF 1, ¶¶ 2, 4, 21 n.3, 24. But in reliance on the consular officers' representations, Mangal applied for a waiver and paid the $930.00 filing fee. *Id.* ¶ 24. Despite the consulate's representations about the availability of a waiver, the "defendants held that the matter involved marriage fraud for which no waiver is available." *Id.* After denying the visa application, the consulate returned the second I-130 petition to USCIS, which eventually revoked it over the plaintiffs' objection. *Id.* ¶ 22. The BIA affirmed the revocation on September 1, 2022, and the plaintiffs filed this suit shortly thereafter. *Id.* Because Mangal could not secure immigration benefits pursuant to the I-130 and is ineligible for an I-601 waiver, she has been unable to travel to the United States to see her ailing mother. *Id.* ¶ 5

n.2; ECF 17, at 1.  If Mangal cannot come to the United States, she likely will never be able to see her mother again.  ECF 17, at 1.

In their complaint, Mangal and Poonwah asserted the government agencies violated the APA by arbitrarily and capriciously revoking the two I-130 petitions and denying the visas.  As relief, they sought a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 5 U.S.C. § 501 *et seq.*, that the defendants' "adjudication of her immigration cases was arbitrary, capricious, an abuse of discretion and otherwise unlawful."  ECF 1, at 13.  They also sought to "enjoin the Defendants from denying and revoking the immigrant visa petition and denying the visa."  *Id.*

On January 6, 2023, the defendants filed a motion to dismiss for lack of subject matter jurisdiction because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of USCIS's decision to revoke the I-130 petitions and the doctrine of consular non-reviewability precludes judicial review of the visa denials.[1]  ECF 13, 13-1.  The plaintiffs never responded.  On June 14, 2023, the Court entered an Order scheduling a telephone hearing on the motion to dismiss for June 27, 2023.  ECF 14.  The plaintiffs still did not respond to the motion.  On the call, counsel for the plaintiffs asked for permission to file an opposition to the motion.  Counsel did not explain why he did not file a timely opposition nor why he did not seek permission to file an opposition out of time after he learned the Court had scheduled a hearing on the motion.  Moreover, counsel was not prepared to respond substantively to the motion on the call.  The Court did not permit a late-filed opposition and ruled on the motion.

The Court dismissed Mangal and Poonwah's complaint without prejudice for lack of subject matter jurisdiction.  ECF 16.  The Court found it did not have subject matter jurisdiction

---

[1] The defendants made other arguments, not relevant here, in support of dismissal.  *See* ECF 13-1.

4

over the challenges to USCIS's decisions to revoke and deny the I-130 petitions. *See Polfliet v. Cuccinelli*, 955 F.3d 377, 384 (4th Cir. 2020). The Court also found it lacked subject matter jurisdiction over the challenges to the consular officers' denials of visas to travel to the United States because "[t]he doctrine of consular nonreviewability plainly prohibits this court from questioning the consular officer's visa determination." *Sesay v. United States*, 984 F.3d 312, 316 (4th Cir. 2021).

On July 24, the plaintiffs filed a motion for reconsideration of the Court's ruling pursuant to Rule 59(e), ECF 17, which the defendants oppose, ECF 18.

## II. Standard of Review

When, as here, a party files a motion for reconsideration of an order within 28 days of the order, the Court considers the motion under Rule 59(e) of the Federal Rules of Civil Procedure. *See Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011). "Reconsideration is an 'extraordinary remedy,' to be used 'sparingly,' available on only three grounds: 1) an intervening change in controlling law; 2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest injustice." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A clear error of law means the decision was "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403. "[M]ere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

**III.     Discussion**

The plaintiffs do not identify the grounds for reconsideration they believe justify the extraordinary relief afforded by Rule 59(e). They cite no intervening change in controlling law or previously unavailable evidence. As best the Court can tell, the plaintiffs argue reconsideration is warranted to correct a clear error of law or prevent manifest injustice. Yet they establish neither.

**A. The Court Lacks Subject Matter Jurisdiction Over the Claims**

The APA provides for judicial review of final agency decisions "except to the extent (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). If the exceptions to judicial review apply, courts lack subject matter jurisdiction over the challenge. *Angelex Ltd. v. United States*, 723 F.3d 500, 506 (4th Cir. 2013).

**1. Revocation of I-130 Petitions is Committed to Agency Discretion**

When a U.S. citizen files an I-130 petition, as Poonwah did, they do so pursuant to 8 U.S.C. § 1154.[2] *See Polfliet*, 955 F.3d at 379. A related provision, 8 U.S.C. § 1155, authorizes DHS to, "at any time, for what [it] deems to be good and sufficient cause, revoke the approval of any petition approved by [it] under" § 1154. The INA contains a third relevant provision, 8 U.S.C. § 1252(a)(2)(B)(ii), which deprives federal courts of jurisdiction to review "any other decision or action" committed to the agency's discretion. So, if § 1155 commits to USCIS's discretion the decision to "revoke the approval of any petition," then § 1252(a)(2)(B)(ii) deprives this Court of jurisdiction to review the agency's actions under the APA. *See Angelex Ltd.*, 723 F.3d at 506.

In *Polfliet*, the Fourth Circuit addressed this precise issue. There, USCIS approved an I-

---

[2] The plaintiffs challenge the decisions to revoke the I-130 petitions filed by Poonwah and Green, but Green is not a plaintiff to this suit and the plaintiffs have no standing to bring a claim on his behalf. In any event, the Court would have not subject matter jurisdiction to review the decision to revoke Green's petition for the same reasons it has none to review the decision to revoke Poonwah's.

6

130 petition that Robert Polfliet, a U.S. citizen, had filed in January 2012 on behalf of his stepson, Masato Kimiki, a Japanese national. *Polfliet*, 955 F.3d at 379. The petition was approved in June 2012, but in November 2013, USCIS issued a notice of intent to revoke the petition because Polfliet, in 2000, had been convicted of possession of child pornography, a violation of 18 U.S.C. § 2252A. *Id.* at 379–80. Under the INA, as amended by the Adam Walsh Act in 2006, anyone convicted of any "specified offense against a minor" (which includes § 2252A) may not file family visa petitions on behalf of a beneficiary unless USCIS determines "in [its] sole and unreviewable discretion" that the petitioner poses "no risk" to the beneficiary. *Id.*; 8 U.S.C. § 1154(a)(1)(A)(viii). USCIS was not aware of the disqualifying conviction when it approved the I-130 petition; it first discovered the conviction while reviewing Kimiki's eligibility for permanent residency. *Polfliet*, 955 F.3d at 380. After Polfliet submitted evidence that he was no risk to Kimiki, USCIS determined otherwise and revoked the previously approved petition. *Id.* Polfliet and Kimiki appealed to the BIA, which dismissed their claim for lack of jurisdiction. *Id.* They then filed APA claims against USCIS, seeking reinstatement of the I-130 petition. *Id.* The district court dismissed the claims for lack of subject matter jurisdiction. *Id.*

The Fourth Circuit held that § 1155 unambiguously commits the decision to revoke an I-130 petition to the agency's discretion. *Id.* at 380, 382. Further, the court observed that "almost every other circuit has held that § 1155's plain language confers discretion." *Id.* (citing decisions from First, Third, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits). Because "§ 1155's plain language confers discretion upon [USCIS] to revoke" I-130 petitions, § 1252(a)(2)(B)(ii) bars judicial review of such decisions. *Id.* at 383.

*Polfliet* applies here. Poonwah, a U.S. citizen, filed an I-130 petition under § 1154, which USCIS approved. The agency later revoked the petition pursuant to its authority under § 1155—

a decision within its discretion. Section 1252(a)(2)(B)(ii), therefore, bars judicial review of the revocation decision. *Id.*

The plaintiffs try to factually distinguish *Polfliet*. They argue Polfliet, unlike Mangal or Poonwah, was convicted of the "highly charged" offense of possession of child pornography and "[c]ourts are rightfully reluctant to review cases involving the revocation of a petition based on [child pornography charges]." ECF 17, at 3–4. And they assert *Polfliet* is not controlling because the "case is [not] about § 204(c) marriage fraud." *Id*. at 3. These factual distinctions are immaterial. The holding in *Polfliet* did not turn on the agency's reason for its discretionary decision (Polfliet's prior criminal conviction). The holding turned on the interpretation of § 1155 and § 1252(a)(2)(B)(ii)—the two statutes at issue here. *Polfliet* extends to every agency decision to revoke an I-130 petition exercised under § 1155—regardless of the agency's reason—because such decisions are within the agency's discretion. 955 F.3d at 383. No fair reading of *Polfliet* could justify limiting it to its specific facts or not extending it to the facts of this case. Bound by *Polfliet*, the Court found it has no subject matter jurisdiction over the plaintiffs' challenge to USCIS's decision to revoke the I-130 petition. No clear error of law occurred.

**2. Consular Non-Reviewability**

The Court also did not err in finding it lacked subject matter jurisdiction over the plaintiffs' challenges to the consular officers' visa denials. According to the doctrine of consular non-reviewability, "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of government to exclude a given alien." *Sesay*, 984 F.3d at 315 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). The plaintiffs do not appear to challenge the Court's determination that, under *Sesay*, it has no subject matter jurisdiction over the consular officers' decisions to deny Mangal visas.

### B. Claims Not Alleged in the Complaint

In their motion for reconsideration, the plaintiffs shift the focus from the Court's grounds for finding no subject matter jurisdiction to allegations and claims they never pled. Try as they might, the plaintiffs cannot amend their pleadings through a motion for reconsideration. And they cannot obtain reconsideration by raising arguments "that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403.

First, the plaintiffs seem to assert that they alleged a due process claim in their complaint and that Poonwah's constitutional rights were burdened by the visa denial. ECF 17, at 4–6 (citing *Kerry v. Din*, 576 U.S. 86 (2015), and *Kleindinst v. Mandel*, 408 U.S. 753 (1972)). But in their complaint, they make only passing and vague references to due process violations. *See, e.g.*, ECF 1, ¶¶ 19, 24, 27–28, 35. And they do not specifically allege that Poonwah's constitutional rights were burdened by the denial of his adult daughter's visa. Nor do they identify a case that recognizes a U.S. citizen's constitutional rights were burdened under similar facts. Even if they had adequately alleged a burdened constitutional right, they have not alleged that the government failed to provide a facially legitimate and bona fide reason for the visa denial. *See Sesay*, 984 F.3d at 315–16 (stating "the Government need provide only a statutory citation to explain a visa denial") (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018)) (citing *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment)). On the contrary, they allege the consulate denied Mangal's first visa request after she admitted to marriage fraud, *see* ECF 1, ¶¶ 18–19, and denied her second visa request under Section 212(a)(6)(C)(i) of the INA because she made a misrepresentation to an immigration official, ECF 1, ¶¶ 21–22; ECF 3-2. The plaintiffs do not allege the consular officers acted in bad faith when they denied the visas such that the Court could peer behind the curtain into the facts giving rise to the denials. *See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the

9

judgment); *Sesay*, 984 F.3d at 315. Rather, the plaintiffs vigorously dispute the facts cited as grounds for the visa denials, and they apparently want the Court to review the facts and weigh the evidence. *See* ECF 1, ¶ 34 (alleging the record "makes no reference to any dispositive facts which caused the defendants to deny and revoke this immigrant visa application"); ECF 17, at 2–3 (arguing BIA misstated facts and erred in weighing the evidence of a good faith marriage). That is not the Court's role: "[S]uch an inquiry falls outside the limited scope of [judicial] review." *Sesay*, 984 F.3d at 316. "For the doctrine of consular nonreviewability to have any meaning, [this Court] may not peer behind the decisional curtain and assess the wisdom of the consular determination." *Id.*

Second, the plaintiffs argue the "final agency action" over which they seek judicial review is the September 1, 2022 BIA decision affirming USCIS's decision to revoke Poonwah's I-130 petition. ECF 17, at 1. They argue the BIA "did not meet the legally required standard of its own precedent for § 204(c)." *Id.* at 2 (citing *Matter of Tawfik*, 27 I & N Dec. (BIA 1990)). And they ask the Court to remand the case to the BIA "for a legally sufficient decision." *Id*. There are at least two problems with this argument. In their complaint, the plaintiffs did not identify the BIA decision as the agency action over which they sought judicial review. True, they attached the BIA decision and referred to it in the complaint, but the agency actions they challenged were the decisions of USCIS and the consular officers. *See* ECF 1, ¶¶ 7, 22. They never alleged the BIA committed legal error. And as relief, they sought a declaratory judgment that the defendants' "adjudication of [Mangal's] immigration cases was arbitrary, capricious, an abuse of discretion and otherwise unlawful," and an injunction preventing the defendants from "denying and revoking the immigrant visa petition and denying the visa." ECF 1, at 13. They did not request as relief reversal or remand of the BIA decision. Even if they had challenged the BIA decision, they still

have not established the Court has subject matter jurisdiction to review it because such review would require consideration of the reasons for USCIS's decision to revoke the I-130 petition, which *Polfliet* prohibits.

### IV.     Conclusion

The plaintiffs do not identify any grounds for reconsideration of the June 27 Order dismissing the complaint without prejudice for lack of subject matter jurisdiction. The plaintiffs' motion for reconsideration, ECF 17, is denied. A separate order follows.

December 28, 2023
Date

Deborah L. Boardman
United States District Judge